IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DARLENE P., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-25-123-SLP |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). The parties have briefed their positions, and the matter is now at issue. It is recommended that the Commissioner's decision **REVERSED AND REMANDED.**

I.    PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following two administrative hearings, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 14-24). The Appeals Council denied

Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.   THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 20, 2022, the alleged onset date. (TR. 16). At step two, the ALJ determined Plaintiff suffered from the following severe impairments: plantar fasciitis to the left foot, osteoarthritis to the left knee, status post left total knee arthroplasty with residuals, degenerative disc disease to the lumbar spine, and obesity. (TR. 16). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 19).

At step four, the ALJ concluded that Plaintiff retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except she has the following limitations. The claimant is able to stand and walk for three hours in an eight-hour workday.

(TR. 20).

With this RFC, the ALJ concluded that Plaintiff could perform the demands of her past relevant work as a customer service representative. (TR. 23). As a result, the ALJ found that Plaintiff was not disabled at step four. (TR. 24).

**III.   ISSUES PRESENTED**

On appeal, Plaintiff alleges: (1) the ALJ failed to properly analyze objective evidence and testimony regarding Plaintiff's migraine headaches and resulting limitations, and (2) the ALJ's review of a medical opinion regarding the migraines lacked substantial evidence. (ECF No. 10:3-15).

**IV.   STANDARD OF REVIEW**

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence . . . is more than a mere scintilla . . . and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.     EVIDENCE RELATED TO PLAINTIFF'S MIGRAINE HEADACHES

The record contains both objective medical evidence pertaining to Plaintiff's migraine headaches as well as Plaintiff's testimony regarding the same.

On September 15, 2021, during an office visit with Dr. Heather Barnes, Plaintiff complained of having a "throbbing and sore" headache around her left eye, traveling to her left posterior head, which had been present for six days, and which she described as presenting also with symptoms of photophobia, nausea, and blurry vision. (TR. 373). Dr. Barnes administered Plaintiff an injection of Toradol for pain and Phenergan for nausea, and she prescribed Ubrelvy, 50 mg, to be taken as needed. (TR. 373).

On February 15, 2022, Plaintiff presented to Dr. David McCoy at Yukon Neurology for her migraine headaches. (TR. 410-413). Plaintiff stated that the headache presented in her left eye, lasted "hours to days," occurred more than 15 days per month, was aggravated by unknown factors, and presented with related symptoms involving photophobia, phonophobia, kinesiophobia, nausea, and vomiting. (TR. 410). Dr. McCoy reported that Plaintiff was a good candidate for Botox treatment, as she had not had any succusses with Topamax, beta blockers, or Emgality. (TR. 413). Dr. McCoy also recommended transitioning from Ubrelvy to Nurtec for the migraine pain. (TR. 413).

On April 26, 2022, Plaintiff again complained of severe migraines, reporting the same symptoms and frequency of pain. (TR. 404). Dr. McCoy treated Plaintiff with a Botox injections. (TR. 408). On June 7, 2022, Plaintiff reported that she had not had relief form Botox, but was willing to try another round. (TR. 402). Dr. McCoy administered a second round of Botox on July 26, 2022. (TR. 399). On August 22, 2022, Plaintiff reported

that the second round of Botox was "starting to help," and she only needed the Nurtec about once a week. (TR. 363).

On October 26, 2022, Plaintiff reported a "greater than 50% improvement with botox," and Dr. McCoy administered a series of injections. (TR. 395). On December 19, 2022, Plaintiff reported "breakthrough headaches despite the Botox." (TR. 523). Dr. McCoy added Candesartan to Plaintiff's medication regime. (TR. 523). On February 27, 2023, Plaintiff reported that the Botox was helping her migraines, with a frequency at that time of one per week, or less. (TR. 428). In May, August, and November of 2023 and February 2024, Plaintiff received additional Botox injections from Dr. McCoy. (TR. 532, 536, 540, 544, 545).

On February 27, 2024, Dr. McCoy authored a "Functional Capacity Questionnaire" for Plaintiff, stating that he had been treating her for approximately four years for "intractable chronic migraine headaches" and:

- her associated pain "frequently" interfered with the attention and concentration to perform even simple work tasks;
- the migraines caused Plaintiff to suffer impaired sleep and sensory loss; and
- her migraines would cause Plaintiff to miss more than four days of work per week.

(TR. 517). On March 8, 2024, Dr. Barnes authored a similar questionnaire and reached the same conclusions as Dr. McCoy. (TR. 519).

At the administrative hearing, Plaintiff testified that she has suffered from migraines her entire life, but that they had gotten progressively worse with age. (TR. 44). Plaintiff stated that she suffered 8-12 migraine headaches per month, and that since she

began Botox treatments, the duration of each headache is less—lasting only approximately two days, rather than two weeks. (TR. 41-42). Plaintiff stated that the migraines affect her eyesight, which in turn, prevents her from getting out of bed and functioning and driving. (TR. 41-43). Plaintiff stated that during a migraine, she had to be in a dark quiet room with "no movement" and "total silence," due to symptoms of nausea. (TR. 41-42). Plaintiff testified that with a migraine, she cannot concentrate or focus on anything and suffered photophobia which would require the use of sunglasses if exposed to any light. (TR. 49).

## VI. ERROR IN THE ALJ'S REVIEW OF THE EVIDENCE, OPINIONS, AND TESTIMONY RELATED TO PLAINTIFF'S MIGRAINES

As argued by Plaintiff, the ALJ erred in her review of: (1) the objective medical evidence relating to Plaintiff's migraines, including the opinion of Dr. McCoy as set forth in his "Functional Capacity Questionnaire" and (2) Plaintiff's testimony.

### A. ALJ's Duties in Evaluating Objective Evidence and Medical Opinions

In discussing the objective medical evidence, an ALJ may not ignore evidence that does not support his decision, especially when that evidence is significantly probative. *Biggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001); *see Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (stating that an ALJ must discuss not only "the evidence supporting his decision," but also "the uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects.") Along these lines, "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter*

*v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation and citation omitted). Likewise, an ALJ is not permitted to "mischaracterize or downplay evidence to support [his] findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463–64 (10th Cir. 1987)). Failure to follow these controlling legal standards is grounds for remand. *See, e.g., Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

Particular types of objective medical evidence may be found in the form of a "medical opinion" which the Social Security regulations define as "a statement from a medical source about what [a claimant] can still do despite [her] impairment(s) and whether [a claimant] ha[s] one or more impairment-related limitations or restrictions" in her abilities to:

- Perform physical demands of work activities;
- Perform mental demands of work activities;
- Perform other demands of work, such as seeing, hearing, or using other senses; and
- Adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 404.1513(a)(2). Regardless of its source, the ALJ has a duty to evaluate every medical opinion in the record and articulate its persuasiveness by discussing its "supportability" and "consistency." *See* 20 C.F.R. § 404.1520c(b)(2) & (c)(1)-(2).[1] The

---

[1] "Supportability" refers to the ALJ examining the medical source's own medical evidence and supporting explanations to determine whether the source's opinion (based on the evidence) are persuasive. 20 C.F.R. § 404.1520c(c)(1). "Consistency" involves comparing the medical source's opinion with other medical evidence and prior administrative finding to see whether the opinions and evidence are consistent. 20 C.F.R. § 404.1520c(c)(2).

regulations "do not prescribe the depth at which the ALJ must discuss" these factors. *J. T. L. v. Kijakazi*, No. 22-cv-02343, 2023 WL 5017241, at *5 (D. Colo. Aug. 7, 2023) (citation and internal quotation marks omitted). But at minimum, the ALJ must provide "sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Frazier v. Kijakazi*, No. 20-1147, 2022 WL 682661, at *5 (D.N.M. Mar. 8, 2022) (explaining ALJ's reasoning must be free of "rote analysis and conclusory explanations") (quotations omitted); *see also Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that the proper inquiry on judicial review is whether the reviewing court "can follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied").

>    **B.    Error in the ALJ's Review of the Objective Medical Evidence Related to Plaintiff's Migraine Headaches and Dr. McCoy's Medical Opinion as Set Forth in his Functional Capacity Questionnaire**

At the outset of the ALJ's questioning to Plaintiff, she stated that her disability was owing to her migraines. (TR. 41). Yet despite the extensive evidence and testimony from Plaintiff, the ALJ failed to even consider the migraines as a severe impairment at step two. *See* TR. 16. While the omission would constitute harmless error, the Court should conclude that the ALJ committed reversible error in omitting discussion of significant, probative evidence related to Plaintiff's headaches. For example, when formulating the RFC, the ALJ failed to discuss the entirety of Dr. McCoy's treatment, beginning in February of 2022. Instead, the ALJ began her discussion of the evidence beginning with Plaintiff's July 26, 2022 visit at the Oklahoma Foot and Ankle Institute where she was treated for a foot/ankle sprain and a fractured toe. (TR. 21, 331). The ALJ presumably omitted the

February of 2022 visit with Dr. McCoy because it pre-dated the alleged onset date of July 20, 2022. However, caselaw in this Circuit is clear that the ALJ should consider medical evidence and opinions that predate the disability date. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("[E]ven if a doctor's medical observations regarding a claimant's allegations of disability date from earlier, previously adjudicated periods, the doctor's observations are nevertheless relevant to the claimant's medical history and should be considered by the ALJ."); *Reeves v. Kijakazi*, 2021 WL 5354104, at *3 (W.D. Okla. Nov. 16, 2021) ("Although this record is from nearly two years prior to the alleged onset date, it is still relevant, and the ALJ should have addressed it.") (citing *Hamlin*); *Howry v. Saul*, 2019 WL 4739687, at *3 (W.D. Okla. Sept. 27, 2019) (citing *Hamlin*). The consideration was especially critical here, because Plaintiff's initial visit with Dr. McCoy established a baseline for Plaintiff's migraines, wherein she initially reported to Dr. McCoy that her headache presented in her left eye, lasted "hours to days," occurred more than 15 days per month, was aggravated by unknown factors, and presented with related symptoms involving photophobia, phonophobia, kinesiophobia, nausea, and vomiting. (TR. 410).

Although the ALJ discussed Plaintiff's July 26, 2022 visit regarding her foot/ankle, the ALJ failed to discuss Plaintiff's visit with Dr. McCoy which was on the same date. The omission was critical to the discussion of Plaintiff's migraines, because at that visit, Plaintiff received her second round of Botox injections for her migraines, after reporting in June of 2022 that the first round had not been effective. *See* TR. 399, 402.

The ALJ then discussed Plaintiff's August 22, 2022 visit with Dr. Barnes, but the discussion was devoid of any reference to Plaintiff's migraines—specifically the fact that

Plaintiff believed the Botox was helping and that she was only taking her Nurtec once a week. *See* TR. 21, 363. The ALJ discussed the October and December visits with Dr. McCoy, but again, noticeably absent from the discussion was any reference to Plaintiff's migraines. *See* TR. 21. Again, the failure is crucial, because Plaintiff reported having "breakthrough headaches despite the Botox." (TR. 523). In sum, the Court should conclude that the ALJ's failed to discuss significant, probative evidence concerning Plaintiff's migraines and the failure constitutes reversible error. *See Deardorff v. Commissioner, SSA*, 762 F. App'x 484, 490 (10th Cir. 2019) (reversing and remanding based on ALJ's "fail[ure] to discuss the significant evidence of Mr. Deardorff's headaches and how they might impact his functional abilities.").

The Court should also conclude that the ALJ's evaluation of Dr. McCoy's February 27, 2024 "Functional Capacity Questionnaire" lacked substantial evidence. The ALJ acknowledged Dr. McCoy's opinion that Plaintiff's pain would frequently interfere with her attention and concentration needed to perform simple work tasks and that she would be absent from work more than four days per month. (TR. 22). However, the ALJ ultimately found the opinion "unpersuasive and not supported by Dr. McCoy's February 15, 2024 examination that showed the claimant was in no apparent distress and had no sensory deficits." (TR. 22). Outside from the fact that the February 15, 2024 visit represented only one of many visits with Dr. McCoy, the Court should find the ALJ's reliance on this portion of the treatment notes as selective and misleading, considering that in the same visit, Dr. McCoy noted Plaintiff's report of a migraine in her left eye with "electrical, sharp" pain, associated with symptoms of photophobia, phonophobia, kinesiophobia, nausea,

vomiting. (TR. 541). Likewise, the ALJ found Dr. McCoy's opinion to be "inconsistent with the March 28, 2024 report of Dr. Carter that notes the claimant was not experiencing weakness, numbness, dizziness, vision changes, or sleep disturbances." (TR. 21). But these findings were made by a physician treating Plaintiff for hormone therapy and had no relation to Plaintiff's migraines. Thus, the ALJ's reliance on these findings was improper, especially in light of the opinion from Dr. Barnes on March 8, 2024 which echoed Dr. McCoy's findings. *See* TR. 519. The ALJ discussed Dr. Barnes' opinion, but rejected it as "inconsistent with the August 23, 2023 examination of Dr. McCoy that showed the claimant was in no apparent distress, that her motor function was 5/5 throughout, that she had no sensory deficits, that the Hoffman and Babinski signs were absent, that her station/gait was normal, and she was able to tandem-walk." (TR. 23). Again, the ALJ has engaged in improper selective review of evidence from Dr. McCoy which is unrelated to Plaintiff's migraine headaches to reject Dr. Barnes' opinion.

In sum, although the ALJ engaged in a proper analysis of Dr. McCoy's Functional Capacity Questionnaire by discussing the persuasiveness of the opinion, the Court should ultimately find that the discussion lacked substantial evidence and as a result, cannot stand.

### C.     ALJ's Duties in Evaluating Plaintiff's Subjective Allegations

Social Security Ruling 16-3p provides a two-step framework for the ALJ to evaluate a claimant's subjective allegations. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). First, the ALJ must make a threshold determination regarding "whether there is an underlying medically determinable physical or mental impairment(s) that could

reasonably be expected to produce an individual's symptoms, such as pain." *Id.*, at *2. Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit an individual's ability to perform work-related activities. *Id.* At this second step, the ALJ will examine the objective medical evidence, the claimant's statements regarding his symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.*, at *4. SSR 16-3p also directs the ALJ to consider the following seven factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms:

- Daily activities;
- The location, duration, frequency, and intensity of pain or other symptoms;
- Factors that precipitate and aggravate the symptoms;
- The type, dosage, effectiveness, and side effects of any medication;
- Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
- Any measures other than treatment a claimant has used to relieve pain or other symptoms; and
- Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*, at *7. Finally, in evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. *Id.*, at *9.

### D. Error in the ALJ's Evaluation of Plaintiff's Subjective Allegations

As stated, at the administrative hearing on May 23, 2024, Plaintiff testified extensively regarding her migraine headaches, stating that:

- She suffered 8-12 migraine headaches per month;

- Since she began Botox treatments, the duration of each headache is less—lasting only approximately two days;

- the migraines affected her eyesight, which in turn, prevented her from getting out of bed and functioning and driving; and

- during a migraine, she had to be in a dark quiet room with "no movement" and "total silence," due to symptoms of nausea and photophobia.

*See supra*. The ALJ acknowledged Plaintiff's testimony but rejected it, "based on the February 27, 2023 examination of Dr. Barnes that showed the claimant was in no acute distress, that her gait was normal, and that her strength was normal to her upper and lower extremities." Again, the ALJ's reference to this evidence is illogical, as the February 27, 2023 visit related to Plaintiff receiving cryotherapy for a skin lesion on her left calf and had nothing to do with Plaintiff's testimony concerning her migraines. The ALJ failed to discuss the appropriate factors involved in assessing Plaintiff's subjective allegations, and the Court should find that the ALJ's explanation lacks substantial evidence. *See Harris v. Kijakazi*, No. 22-94-STE, 2022 WL 4543224, at * 3 (W.D. Okla. Sept. 28, 2022) (reversing and remanding for further evaluation of Plaintiff's subjective allegations regarding migraines because "the ALJ never stated how any evidence contradicted or was inconsistent with Plaintiff's allegations of at least 9 debilitating migraine headaches per month which were made worse by sound, light, and movement, and which required her to lie down in a dark quiet room.").

In sum, "because the ALJ did not ... sufficiently articulate his reasoning, [the Court] cannot conduct a meaningful review of the pain assessment." *Brownrigg v. Berryhill*, 688 F. App'x 542, 546 (10th Cir. 2017). As a result, remand is warranted.

## VII.  RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge recommends that the decision of the Commissioner be **REVERSED AND REMANDED.**

The parties are advised of their right to file specific written objections to this Report and Recommendation. *See* 28 U.S.C. §636 and Fed. R. Civ. P. 72. Any such objections should be filed with the Clerk of the District Court by **August 4, 2025**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## VIII.  STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED on July 18, 2025.

*[signature]*

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE